**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN R. LITWAK, JR. D/B/A JRL EMERGENCY SERVICES, | CIVIL ACTION NO. 3:16-cv-00446 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| RICHARD E. TOMKO, MAYOR OF THE BOROUGH OF ST. CLAIR et. al, | |
| Defendants. | |

### **MEMORANDUM**

Presently before the Court is a Motion for Partial Dismissal (Doc. 11) of Plaintiff's Amended Complaint. Because the Court finds that Plaintiff's Amended Complaint (Doc. 9) fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure, the Court will order Plaintiff to file a repleaded Amended Complaint that comports with the Federal Rules.

### **I. Background**

The well-pleaded facts as set forth in Plaintiffs' Amended Complaint (Doc. 9) are as follows:

Plaintiff John R. Litwak, Jr. is a Pennsylvania resident who operates a towing, storage, and repair station called JRL Emergency Services ("JRL") in St. Clair, Shenandoah, and Pottsville, Schuykill County, Pennsylvania. The Amended Complaint names as Defendants: The Borough of St. Clair (the "Borough"); Richard Tomko, as the Mayor of the Borough of St. Clair during all relevant times; James Larish, Micahel Petrozino, Joann Brennan, John Burke, Valeria Davis, and John Houseknecht as members of the Borough Council during all relevant times (Larish as Council President and Petrozino as Council Vice

President); and William Dempsey, Frank DeMarco, and Joseph Leskin as Borough Police Officers at all relevant times.[1]

## A.  Unlawful Seizure of Three Vehicles

Litwak first claims that the Defendants unlawfully seized his personal property on three separate occasions. First, around February 18, 2016, Litwak's 1999 Volkswagen Jetta was towed from Litwak's private property located in St. Clair by Trial Towing Company, allegedly at the Borough's request. The Jetta is titled in the name of Litwak's business, JRL. Second, on a prior unknown date, the St. Clair police seized a 1994 Chevrolet pickup truck titled under one of Litwak's businesses while it was parked on Litwak's private property. Litwak claims this truck is being held at B's Garage in Pottsville, Pennsylvania, with towing and storage bills amounting to over $90,000.00. Third, on another unknown date, the St. Clair police seized another 1994 Chevrolet pickup owned by Litwak while it was parked on property leased by Litwak in Gilberton, Pennsylvania. The current location of this vehicle is unknown. Litwak claims that the Borough presently retains custody of both 1994 Chevrolet pickups and refuses to return either of them. No search warrant or receipt for seized property was issued, and no "legitimate reason" was given for the seizure of any of the three vehicles.

## B.  St. Clair Borough Zoning Appeal Dispute

Litwak owns parcels of land located in the Borough that are zoned in a C-2 General Commercial District under St. Clair Zoning Ordinance 326 (the "Ordinance"). Section 5.202 of the Ordinance entitled "Uses Permitted By Right" states in relevant part:

---

[1] Plaintiff's Amended Complaint erroneously names Defendant Dempsey as a Borough Councilman and fails to include Defendants DeMarco and Leskin under the "Parties" section. However, the Court can conclude from the Caption and other allegations in the Amended Complaint that Defendants Dempsey, DeMarco, and Leskin are being sued as Borough Police Officers. (*See, e.g.*, Am. Compl. ¶¶ 15, 22, 65, 67, 71-73.)

> Land and buildings in a C-2 District may be used for the following purposes and no others:
>
> 1. Retail and wholesale of goods, prepared foods, and services.
>
> 19. Motor vehicle service station, subject to:
>
>     (a) All automobile parts, dismantled vehicles and similar articles shall be stored within a building.
>
>     (b) All repair activities shall be carried out within a building.
>
> 20. Repair garage, subject to:
>
>     (a) All repair activities shall be performed within a building.
>
>     (b) All outdoor storage of dismantled vehicles, automobile parts, and similar items shall be screened from view in such a manner that the outdoor storage of materials is not visible from adjoining properties or public streets.[2]

On June 20, 1996, a Borough zoning officer issued Litwak a zoning permit which certified the repair garage Litwak sought to open was a use in compliance with the Ordinance. Days later, the Borough revoked the June 20, 1996 permit. On April 28, 1997, Litwak applied for a zoning variance or declaration that his proposed activities were "permitted uses" under the Ordinance. On April 29, 1997, Litwak and his wife, Francis Litwak, filed an Application with the Borough Zoning Hearing Board ("Zoning Board") seeking a determination that the sale, service, and repair of used automobiles on his parcels of land in a C-2 zoning district was a permitted use as of right under Section 5.202. The Zoning Board did not hold a hearing on the Application within sixty (60) days of its filing. Under the Pennsylvania Municipalities Planning Code, 53 P.S. § 10908(1.2), "[t]he first hearing before the [zoning] board or hearing officer shall be commenced within 60 days from the date of receipt of the

---

[2] The Amended Complaint notes that Ordinance 328 took effect in February 2005. (Am. Compl. ¶ 49.) This new ordinance maintained the identical definitions for the relevant uses permitted by right in a C-2 General Commercial District. (*See* Am. Compl. Ex. 11, at 306(B)(5)(a), (s), (t).)

applicant's application, unless the applicant has agreed in writing to an extension of time." Furthermore, § 10908(9) states:

> Where the board fails to . . . commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

On September 2, 1997, Litwak published a Notice in the Pottsville Republican Herald Newspaper that stated because "[t]he Board did not hold a hearing on the Variance Application within sixty (60) days of the Filing Date. . . a decision granting the Relief is thus deemed to have been rendered in favor of the Applicants." The Borough subsequently filed an appeal of the decision on September 22, 1997. On April 21, 1998, the entire record from the Zoning Board regarding this matter was filed with the Schuylkill County Prothonotary. In August of 2000, the Prothonotary sought to have the case purged for lack of docket activity. In response, the Borough filed a motion to remove the zoning case from the purge list together with a certificate of service. The Borough's motion was granted on November 11, 2000. The only other docket entries from April 21, 1998 to October 28, 2015 were made on September 5, 2003, August 8, 2006, September 11, 2012, and September 28, 2015. These entries were all Statements of Intention to Proceed with the appeal and a concurrent certificate of service filed by the Borough.

Around October 28, 2015, Litwak filed a motion to dismiss with prejudice the Borough's eighteen-year-old zoning appeal. The Schuylkill County Court of Common Pleas scheduled a hearing on Litwak's motion for December 16, 2015. On December 3, 2015, the Borough withdrew its appeal. The Borough has not issued a zoning permit to Litwak after it withdrew its zoning appeal. While the Borough's appeal was pending, other individuals

4

located within the C-2 zoning district were granted zoning permits by the Borough. Specifically, Tom's Auto Sales was granted a zoning permit for a used car lot in 1999 for property in a C-2 zoning district that is less than one-quarter mile from Litwak's location. Additionally, 21st Street Motors was granted a zoning permit for a used car lot in 1979 for a location in a C-2 zoning district that is three blocks from Litwak's location.

**C.     Litwak's Towing Business**

In 1989, Litwak began operating JRL, a towing service and related business, along Route 61 with a principal place of business at 148 North 3rd Street, St. Clair, Pennsylvania. From 1989 to the present, Litwak regularly received requests to tow vehicles from private motorists, members of the Pennsylvania State Police, and members of the police from surrounding communities. Since opening JRL, Litwak has made requests to the Borough Council, as well as to federal and state government officials, asking the Borough to be advised to utilize his towing services to no avail. From 1994 to the present, Litwak claims his towing business possessed the capabilities necessary to conduct vehicle towing operations for situations requiring emergency and non-emergency towing services, accident clean up, and accident remediation services within and outside of the Borough.

Beginning in 1997, Litwak would attend the Borough Council meetings and attempt to discuss the problems he was having regarding his zoning problems and towing operations. In addition to the seizure of his three vehicles and ongoing zoning dispute noted above, Litwak claims the Borough blacklisted him from towing jobs. Litwak petitioned the Borough at least forty (40) times regarding the blacklisting of JRL and his zoning dispute. Despite JRL's location right next to Route 61 in the Borough of St. Clair, Litwak claims Defendants Officers Dempsey, DeMarco, and Leskin refused to call his towing service when an accident occurred within the Borough along Route 61. Litwak specifically claims the Defendant Police Officers would exclusively call Trail Towing instead of JRL, despite the fact that Trail Towing would sometimes take over an hour to arrive on the scene and travel over weight-limited and restricted roadways with vehicles weighing in excess of the limit.

Despite this alleged Borough policy or custom to exclusively use Trail Towing, Litwak notes that the Borough Police used JRL for towing services twice. In the Summer of 2013, Litwak complained to then-Mayor Robert Maley that the Borough Police would not use his towing services. Maley wrote a letter to Defendant Officer Dempsey, the Acting Chief of Police, dated September 20, 2013, which states in relevant part: "Effective September 20, 2013, JRL . . . will be utilized as the towing service for the St. Clair police department. JRL will provide services for towing, abandoned vehicles, accidents, etc." (Am. Compl. Ex. 12.) During the two towing jobs Litwak performed for the Borough Police, Litwak arrived to the scene within fifteen minutes of being called, whereas it would take Trail Towing approximately forty-five minutes to respond to any accident that occurred in near proximity to the Borough. Despite this response time, Defendant Police Chief Dempsey told Litwak he had a poor response time, was incompetent, and distracted motorists by leaving his emergency lights activated while at the scene of the accident.

On December 24, 2013, Litwak filed a Right-to-Know request with the Borough, in which he requested "all Police Reports and assistance including time, date, officer, and tow companies with the rate sheets for tow's removal, accident and abandoned vehicles both in St. Clair Borough limits and Route 61 from June 1, 2013 to December 1, 2013, the current tow list from June 1, 2013 to Dec. 1, 2013." (Am. Compl. ¶ 85.) The Borough denied Litwak's request on January 29, 2014, claiming the records sought were related to a criminal investigation, which are exempt from disclosure under Pennsylvania law. Litwak filed an appeal to the Pennsylvania Office of Open Records. On March 14, 2014, the Office of Open Records issued a final determination which held: "The Borough of St. Clair is required to provide all responsive records, with the exception of records alleged to be protected under Title 65 P.S. 67.708(b)(16) and accident reports submitted to the Department by the Borough, to [Litwak] within thirty (30) days." (*Id.* ¶ 88.) The Borough filed an appeal of this final determination in the Schuylkill County Court of Common Pleas. At the appeal hearing before the Court of Common Pleas, Judge Miller agreed that the Borough had no list of towing companies and had no obligation to provide such records.

## II. Discussion

Litwak filed his Amended Complaint on June 22, 2016. (Doc. 9.) The Amended Complaint raises five counts,[3] but each count contains more than one claim for relief. (*See, e.g.*, Am. Compl. First Claim for Relief ¶¶ 94-96.) The counts do not clearly define or distinguish what claims are being alleged, instead employing an "everything-but-the-kitchen-sink" approach to the requests for relief. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). As Litwak is represented by counsel, the Court need not liberally construe his Amended Complaint. *See Ostrowski v. D'Andrea*, No. 3:14-cv-00429, 2015 WL 10434888, at *3 (M.D. Pa. Aug. 11, 2015). The Court finds Litwak's Amended Complaint fails to satisfy Federal Rule of Civil Procedure 10(b), which, when clarity is at issue, requires "each claim founded on a separate transaction or occurrence . . . [to] be stated in a separate count. . . ." *See Magluta*, 256 F.3d at 1284 ("This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts."). Most notably, the "First Claim for Relief" claims that the revocation of Litwak's zoning permit violated his property rights, due process rights, and equal protection rights, while concurrently claiming that the alleged vehicle seizures–a wholly separate event–also violated his property rights, due process rights, and equal protection rights. (Am. Compl. ¶¶ 95-96.) Moreover, in that same claim for relief, Litwak also states that the government interfered with his property interest in his "vocation," (*id.* ¶ 94), but it is unclear if this is a separate due process claim or whether that property interest is the same interest allegedly deprived in paragraph 95. Additionally, no distinction is made between substantive and procedural due process in any count. Also confusingly, Counts Three and Four contain an express Wherefore Clause requesting relief, but the other three counts do not. Furthermore, it is entirely unclear what legal basis for relief is being asserted in Count Four, as it could be construed as an attempt to

---

[3] The Amended Complaint uses the term "Claim For Relief" instead of "Count." Because each "claim" actually contains multiple claims and requests for relief, in the interest of clarity the Court will refer to them as "counts."

allege a takings claim, or possibly a redundant claim for unlawful seizure of property and/or a due process violation, or a state-law tort theory of relief, or a request for an affirmative injunction despite no stated irreparable injury.

The Amended Complaint also runs afoul of Rule 8(a). It is 123 paragraphs long and can be construed as naming all twelve Defendants in each count. *See Banks v. U.S. Marshals Serv.*, No. 15-127, 2016 WL 1393398, at *10 (W.D. Pa. Feb. 24, 2016). The Amended Complaint also fails to even attempt to allege whether the officials are being sued in their individual or official capacities. Each count incorporates by reference a ninety-one paragraph introductory section of the Amended Complaint entitled "Facts of the Case," while also incorporating the allegations of any count that precedes it. Each count is therefore "replete with factual allegations that could not possibly be material to that specific count." *Magluta*, 256 F.3d at 1284; *see Washington v. Wadren SCI-Greene*, 608 Fed. Appx. 49, 51-52 (3d Cir. 2015) (affirming district court's dismissal of *pro se* plaintiff's amended complaint for violating Rule 8).

However, the Court will not dismiss Litwak's Amended Complaint despite these deficiencies, but will instead order Litwak to replead with more specificity. "Rule 12(e) implicitly authorizes courts to order plaintiffs to amend their complaints." *Nicolaysen v. BP Amoco Chem. Co.*, No. CIV.A.01-CV-5465, 2002 WL 1060587, at *3 (E.D. Pa. May 23, 2002); *see Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 n.5 (11th Cir. 1996); *see also Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1127 (11th Cir. 2014) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 984 (11th Cir. 2008) ("In light of defense counsel's failure to request a repleader, the court, acting *sua sponte*, should have struck the plaintiff's complaint, and the defendants' answer, and instructed plaintiff's counsel to file a more definite statement.")); *Prayor v. Fulton Cty.*, No. 1:08-cv-3772-WSD, 2009 WL 981996, at *5 (N.D. Ga. Apr. 13, 2009) ("The Court has an obligation to intervene *sua sponte* to address a shotgun pleading or

shotgun answer, for failure to do so risks inefficient management of the Court's docket and effectively obstructs justice by wasting the time of the Court and litigants.").

Accordingly, the Court will order Litwak to file a repleaded Amended Complaint. Although the length and repetitiveness of the instant Amended Complaint does not comport with the concept of a "short and plain statement showing that the pleader is entitled to relief," the fatal flaws with the present Amended Complaint stem from the lack of precision in the "Five Claims for Relief." (Am. Compl. ¶¶ 92-123.) Therefore, the repleaded Amended Complaint must list each discrete cause of action in a separate count, and identify with specificity the factual allegations used to support each discrete claim against each individual Defendant(s). Litwak is encouraged to label each Count in a manner that identifies the cause of action asserted therein, instead of employing a generic heading of "First Claim for Relief," etc. In being ordered to replead under Rule 12(e), Litwak is not being granted leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2), and therefore cannot add new claims and/or parties which are not apparent from the allegations in the instant Amended Complaint. *Betts v. Conecuh Cty. Bd. of Educ.*, No. 13-0356-CG-N, 2014 WL 7411670, at *13 (S.D. Ala. Dec. 30, 2014).

An appropriate order follows.

January 17, 2017                             /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                             United States District Judge