# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. LITWAK, JR., D/B/A JRL EMERGENCY SERVICES, | CIVIL ACTION NO. 3:16-CV-00446 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| RICHARD E. TOMKO, MAYOR OF THE BOROUGH OF ST. CLAIR et. al., | |
| Defendants. | |

## MEMORANDUM

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for failing to state a claim upon which relief can be granted. Alternatively, Defendants' move for a more definite statement claiming that Plaintiff's Second Amended Complaint is so vague or ambiguous that they cannot reasonably prepare a response. Defendants' Motion to Dismiss will be denied as moot because this Court will grant Defendants' Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).

## I. Background

### A. Factual History

The well-pleaded facts as set forth in Plaintiff's Second Amended Complaint (Doc. 18) are as follows:

Plaintiff John R. Litwak, Jr. is a Pennsylvania resident who operates a towing, storage, and repair station called JRL Emergency Services ("JRL") in St. Clair, Shenandoah, and Pottsville, Schuykill County, Pennsylvania. The Second Amended Complaint names as Defendants: The Borough of St. Clair (the "Borough"); Richard Tomko, as the Mayor of the Borough of St. Clair during all relevant times; James Larish, Michael Petrozino, Joann Brennan, John Burke, Valeria Davis, and John Houseknecht as members of the Borough

Council during all relevant times (Larish as Council President and Petrozino as Council Vice President); and William Dempsey, Frank DeMarco, and Joseph Leskin as Borough Police Officers at all relevant times. Defendants are "all named in both their official and personal capacities."

### 1. Unlawful Seizure of Three Vehicles

Litwak first claims that the Defendants unlawfully seized his personal property on three separate occasions. First, around February 18, 2016, Litwak's 1999 Volkswagen Jetta was towed from Litwak's private property located in St. Clair by Trial Towing Company, allegedly at the request of the Borough, all three named police officers, and the named council members.[1] The Jetta is titled in the name of Litwak's business, JRL. Second, on a prior unknown date, the St. Clair police–specifically Officers Demarco and Dempsey–seized a 1994 Chevrolet pickup truck titled under one of Litwak's businesses while it was parked on Litwak's private property. Litwak claims this truck is being held at B's Garage in Pottsville, Pennsylvania, with towing and storage bills amounting to roughly $90,000.00. Third, on another unknown date, the St. Clair police seized another 1994 Chevrolet pickup owned by Litwak while it was parked on property leased by Litwak in Gilberton, Pennsylvania. The current location of this vehicle is unknown. Litwak claims that the Borough presently retains custody of both 1994 Chevrolet pickups and refuses to return either of them. No search warrant or receipt for seized property was issued, and no "legitimate reason" was given for the seizure of any of the three vehicles.

### 2. St. Clair Borough Zoning Appeal Dispute

Litwak owns parcels of land located in the Borough that are zoned in a C-2 General Commercial District under St. Clair Zoning Ordinance 326 (the "Ordinance"). Section 5.202 of the Ordinance entitled "Uses Permitted By Right" states in relevant part:

> Land and buildings in a C-2 District may be used for the

---

[1] While not immediately clear, it appears that Plaintiff claims that the Borough made the initial request and it was then executed by the council members and named officers. (Doc. 18, at ¶ 25).

2

> following purposes and no others:
> 1. Retail and wholesale of goods, prepared foods, and services.
> 19. Motor vehicle service station, subject to:
>    (a) All automobile parts, dismantled vehicles and similar articles shall be stored within a building.
>    (b) All repair activities shall be carried out within a building.
> 20. Repair garage, subject to:
>    (a) All repair activities shall be performed within a building.
>    (b) All outdoor storage of dismantled vehicles, automobile parts, and similar items shall be screened from view in such a manner that the outdoor storage of materials is not visible from adjoining properties or public streets.

On June 20, 1996, a Borough zoning officer issued Litwak a zoning permit which certified the repair garage Litwak sought to open was a use in compliance with the Ordinance. Days later, the Borough revoked the June 20, 1996 permit. On April 28, 1997, Litwak applied for a zoning variance or declaration that his proposed activities were "permitted uses" under the Ordinance. On April 29, 1997, Litwak and his wife, Frances Litwak, filed an Application with the Borough Zoning Hearing Board ("Zoning Board") seeking a determination that the sale, service, and repair of used automobiles on his parcels of land in a C-2 zoning district was a permitted use as of right under Section 5.202. The Zoning Board did not hold a hearing on the Application within sixty (60) days of its filing. Under the Pennsylvania Municipalities Planning Code, 53 P.S. § 10908(1.2), "[t]he first hearing before the [zoning] board or hearing officer shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time." Furthermore, § 10908(9) states:

> Where the board fails to . . . commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent

jurisdiction.

On September 2, 1997, Litwak published a Notice in the Pottsville Republican Herald Newspaper that stated because "[t]he Board did not hold a hearing on the Variance Application within sixty (60) days of the Filing Date. . . a decision granting the Relief is thus deemed to have been rendered in favor of the Applicants." The Borough subsequently filed an appeal of the decision on September 22, 1997. On April 21, 1998, the entire record from the Zoning Board regarding this matter was filed with the Schuylkill County Prothonotary. In August of 2000, the Prothonotary sought to have the case purged for lack of docket activity. In response, the Borough filed a motion to remove the zoning case from the purge list together with a certificate of service. The Borough's motion was granted on November 11, 2000. The only other docket entries from April 21, 1998 to October 28, 2015 were made on September 5, 2003, August 8, 2006, September 11, 2012, and September 28, 2015. These entries were all Statements of Intention to Proceed with the appeal and a concurrent certificate of service filed by the Borough.

Around October 28, 2015, Litwak filed a motion to dismiss with prejudice the Borough's eighteen-year-old zoning appeal. The Schuylkill County Court of Common Pleas scheduled a hearing on Litwak's motion for December 16, 2015. On December 3, 2015, the Borough withdrew its appeal. The Borough has not issued a zoning permit to Litwak after it withdrew its zoning appeal. While the Borough's appeal was pending, other individuals located within the C-2 zoning district were granted zoning permits by the Borough. Specifically, Tom's Auto Sales was granted a zoning permit for a used car lot in 1999 for property in a C-2 zoning district that is less than one-quarter mile from Litwak's location. 21st Street Motors was also granted a zoning permit for a used car lot in 1979 for a location in a C-2 zoning district that is three blocks from Litwak's location. Additionally, Kenneth Diehl was granted a zoning permit to "conduct auto sales [on] property he purchased from Defendant Joanne Brennan. . . ." (Doc 18, ¶ 93).

### 3. **Litwak's Towing Business**

In 1989, Litwak began operating JRL, a towing service and related business, along

Route 61 with a principal place of business at 148 North 3rd Street, St. Clair, Pennsylvania. From 1989 to the present, Litwak regularly received requests to tow vehicles from private motorists, members of the Pennsylvania State Police, and members of the police from surrounding communities. Since opening JRL, Litwak has made requests to the Borough Council, as well as to federal and state government officials, asking the Borough to be advised to utilize his towing services to no avail. From 1994 to the present, Litwak claims his towing business possessed the capabilities necessary to conduct vehicle towing operations for situations requiring emergency and non-emergency towing services, accident clean up, and accident remediation services within and outside of the Borough.

Beginning in 1997, Litwak would attend the Borough Council meetings and attempt to discuss the problems he was having regarding his zoning problems and towing operations. In addition to the seizure of his three vehicles and ongoing zoning dispute noted above, Litwak claims the Borough blacklisted him from towing jobs. Litwak petitioned the Borough at least forty (40) times regarding the blacklisting of JRL and his zoning dispute. Despite JRL's location right next to Route 61 in the Borough of St. Clair, Litwak claims Defendants Officers Dempsey, DeMarco, and Leskin refused to call his towing service when an accident occurred within the Borough along Route 61. Litwak specifically claims the Defendant Police Officers would exclusively call Trail Towing instead of JRL, despite the fact that Trail Towing would sometimes take over an hour to arrive on the scene and travel over weight-limited and restricted roadways with vehicles weighing in excess of the limit.

Despite this alleged Borough policy or custom to exclusively use Trail Towing, Litwak notes that the Borough Police used JRL for towing services twice. In the Summer of 2013, Litwak complained to then-Mayor Robert Maley that the Borough Police would not use his towing services. Maley wrote a letter to Defendant Officer Dempsey, the Acting Chief of Police, dated September 20, 2013, which states in relevant part: "Effective September 20, 2013, JRL . . . will be utilized as the towing service for the St. Clair police department. JRL will provide services for towing, abandoned vehicles, accidents, etc." (Doc. 18, Ex. 12). During the two towing jobs Litwak performed for the Borough Police, Litwak arrived to the

5

scene within fifteen minutes of being called, whereas it would take Trail Towing approximately forty-five minutes to respond to any accident that occurred in near proximity to the Borough. Despite this response time, Defendant Police Chief Dempsey told Litwak he had a poor response time, was incompetent, and distracted motorists by leaving his emergency lights activated while at the scene of the accident.

On December 24, 2013, Litwak filed a Right-to-Know request with the Borough, in which he requested "all Police Reports and assistance including time, date, officer, and tow companies with the rate sheets for tow's removal, accident and abandoned vehicles both in St. Clair Borough limits and Route 61 from June 1, 2013 to December 1, 2013, the current tow list from June 1, 2013 to Dec. 1, 2013." (Doc. 18, ¶ 125). The Borough denied Litwak's request on January 29, 2014, claiming the records sought were related to a criminal investigation, which are exempt from disclosure under Pennsylvania law. Litwak filed an appeal to the Pennsylvania Office of Open Records. On March 14, 2014, the Office of Open Records issued a final determination which held: "The Borough of St. Clair is required to provide all responsive records, with the exception of records alleged to be protected under Title 65 P.S. 67.708(b)(16) and accident reports submitted to the Department by the Borough, to [Litwak] within thirty (30) days." (*Id.* ¶ 128a). The Borough filed an appeal of this final determination in the Schuylkill County Court of Common Pleas. At the appeal hearing before the Court of Common Pleas, Judge Miller agreed that the Borough had no list of towing companies and had no obligation to provide such records.

**B. Procedural History**

On March 11, 2016, Plaintiff filed a complaint in the United States District Court for the Middle District of Pennsylvania against the twelve Defendants described above. (Doc. 1). Following Defendants' first Motion to Dismiss on June 7, 2016 (Doc. 7), Plaintiff amended his original complaint. (Doc. 9). However, Defendants' moved to dismiss Plaintiff's First Amended Complaint on July 6, 2016 claiming that the infirmities in the original complaint had not been cured. (Doc. 11).

On January 17, 2017, this Court denied Defendants' Motion to Dismiss as moot and

ordered Plaintiff to replead his amended complaint due to its failure to comply with the pleading standards established by the Federal Rules of Civil Procedure. (Doc. 17). Plaintiff timely filed his Second Amended Complaint on January 30, 2017. (Doc. 18). Following the filing of Plaintiff's Second Amended Complaint, Defendant filed the instant Motion to Dismiss. (Doc. 19).

The instant motion has been fully briefed and is ripe for review.

## II. Discussion

**A. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Violating the Federal Rules of Civil Procedure and this Court's January 17, 2017 Order:**

Defendants first argue that Plaintiff's Second Amended Complaint should be dismissed because it does not comply with Federal Rule of Civil Procedure 8 and it intermingles separate causes of action within each count in contravention of this Court's January 17, 2017 order. Plaintiff disagrees. While ignoring Defendants' argument related to Rule 8, Plaintiff suggests that the Second Amended Complaint complied with this Court's order by separating its claims into three "distinct" counts. This Court agrees with Defendants that Plaintiff's Second Amended Complaint is in violation of the requirements set forth in Federal Rule of Civil Procedure 8. But, this Court will provide Plaintiff a final opportunity to amend, and will grant Defendants' Motion for a More Definite Statement.

Federal Rule of Civil Procedure 8 provides "that any pleading that includes a claim for relief shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Westinghouse Securities Litigation*, 90 F.3d 696, 702 (3d Cir. 1998) (Alito, J) (citing FED.R.CIV.P. 8(a)(2)). Rule 8 further provides that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Securities Litigation*, 90 F.3d at 702 (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1217 at 169 (2d ed. 1990)).

7

Failure to comply with the mandate of Rule 8 can result in dismissal or the opportunity to replead the complaint. *See* FED.R.CIV.P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."); *see, e.g.*, *Washington v. Warden SCI-Greene*, 608 Fed. App'x. 49, 51 (3d Cir. 2015) (allowing for the dismissal of a pro se complaint in violation of FED.R.CIV.P. 8).

As noted in this Court's January 17, 2017 Memorandum, Plaintiff's First Amended Complaint was in violation of this rule. It was over 120 paragraphs long, and could have been construed as naming all twelve defendants in each count. Further, it failed to distinguish between individual claims, instead employing an "everything-but-the-kitchen-sink" approach to pleading. While noting the violation, this Court decided to provide Plaintiff an opportunity to replead the complaint in accord with the mandate of Rule 8.

Unfortunately, not much has changed in the Second Amended Complaint; it remains a "shotgun" pleading.[2] The Second Amended Complaint is longer than the First–totaling 144 paragraphs–and continues to incorporate by reference the averments of each pled Count

---

[2] "The United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in this area. The Eleventh Circuit recently categorized shotgun pleadings into four different types: (1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does 'not separat[e] into a different count each cause of action or claim for relief'; and (4) a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.' The 'unifying characteristic of these four types of shotgun pleadings 'is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Bartol v. Barrowclough*, No. 17-0614, 2017 WL 1709814, *3-4 (E.D. Pa. May 3, 2017) (citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

8

in each subsequent Count. Thus, the Second Amended Complaint remains "replete with factual allegations that could not possibly be material to [a] specific count." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *see Bartol*, 2017 WL 1709814 at *3-4. In large part, the only change made by Plaintiff was to add three headings. However, this change did little to clarify the claims alleged or the offending actions undertaken by Defendants. For example, Count Three, titled "Tortious Interference with Prospective and Actual Contractual Relationships," claims that the actions pled resulted in a "deprivation of equal protection, denial of due process, and selective treatment motivated by an intention by the Defendants to willfully discriminate on the basis of desire to punish. . . Plaintiff . . . ." Such a statement is not only conclusory, but confusing because the deprivation described is wholly unrelated to a state contract claim of tortious interference. Such a pleading–one that intermingles a wide number of claims based on a variety of legal theories–runs afoul of the Federal Rules and this Court's January 17, 2017 order.

Moreover, Plaintiff has failed to offer any meaningful clarification regarding the claims he intends to levy against the Defendants.[3] There is no question that he suggests that his constitutional rights have been violated. However, any specific reference to constitutional provisions are buried under the considerable, unnecessary ink spilled throughout the Second Amended Complaint. For example, in Count Two Plaintiff makes no reference to a claim brought under §1983–in so far that one was not included in the 53 paragraphs incorporated by reference–instead referencing to a state statute and generally to the 14th Amendment. There is neither factual averment discussing the basis for the 14th Amendment

---

[3] Notably, Plaintiff is represented by counsel; he is not a pro se plaintiff. As such, this Court is not required to liberally construe Plaintiff's complaint to make out potential claims. *See Ostrowski v. D'Andrea*, No. 3:14-cv-00429, 2015 WL 10434888, at *3 (M.D. Pa. Aug. 11, 2015). Instead, it is the job of Plaintiff's counsel to clearly articulate a federal claim in the complaint.

violations nor factual averment specifically linking a named defendant to alleged wrongdoing. Simply put, lofty conclusions regarding perceived wrongs are not sufficient to allege a federal cause of action.

It is within the Courts discretion to dismiss Plaintiff's Second Amended Complaint. *See, e.g.*, Washington, 608 Fed. App'x. at 51. But, this Court will allow Plaintiff a final opportunity to replead the complaint to conform with Rule 8. In other words, Plaintiff is expected to file a complaint that clearly articulates the basis for its claims, the factual allegations used to support each claim, and the factual allegations against each individual defendant against which a given claim is brought. Plaintiff is highly encouraged to separate each discrete cause of action into a separate counts. This means that a claim regarding an alleged Fourth Amendment violation should not be commingled with either a Fourteenth Amendment or state law claim. Remember, the Federal Rules place emphasis on clarity and brevity.

Again, in being ordered to replead under Rule 12(e), Plaintiff is not being granted leave to amend his complaint under Federal Rule of Civil Procedure 15(a)(2). Therefore, Plaintiff will be unable to add new claims[4] and/or parties which were not apparent from the allegations in the *First* Amended Complaint.

### III. Conclusion

For the above stated reasons, Defendants' Motion for a More Definite Statement will be granted and Plaintiff will be ordered to replead his complaint in accord with the standards prescribed by the Federal Rules of Civil Procedure. As such, Defendants' Motion to Dismiss will be denied as moot.

---

[4] This includes claims based on state law grounds that are unconnected to alleged § 1983 liability. There was no indication in the First Amended Complaint that such claims would be litigated in this action. In fact, to date, supplemental jurisdiction has not been pled.

An appropriate order follows.

September 19, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
United States District Judge