# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. LITWAK, JR., D/B/A JRL EMERGENCY SERVICES,<br><br>    Plaintiff,<br><br>        v.<br><br>RICHARD E. TOMKO, MAYOR OF THE BOROUGH OF ST. CLAIR et. al.,<br><br>    Defendants. | CIVIL ACTION NO. 3:16-CV-00446<br><br>(JUDGE CAPUTO) |

## **MEMORANDUM**

Presently before this Court is Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint for failing to state a claim upon which relief can be granted and for failing to comply with the Federal Rules of Civil Procedure. This Motion will be granted because Plaintiff has refused to amend his Complaint in accord with my earlier Orders and the Federal Rules of Civil Procedure.

## I. Background

### A. Factual History

Plaintiff John R. Litwak, Jr. is a Pennsylvania resident who operates a towing, storage, and repair station called JRL Emergency Services ("JRL") in St. Clair, Shenandoah, and Pottsville, Schuykill County, Pennsylvania. (Third Amended Complaint ("TAC"), at ¶¶ 1-2.) The Third Amended Complaint names as Defendants: The Borough of St. Clair (the "Borough"); Richard Tomko, as the Mayor of the Borough of St. Clair during all relevant times; James Larish, Michael Petrozino, Joann Brennan, John Burke, Valeria Davis, and John Houseknecht as members of the Borough Council during all relevant times (Larish as Council President and Petrozino as Council Vice President); and William Dempsey, Frank DeMarco, and Joseph Leskin as Borough Police Officers at all relevant times. (TAC, at ¶¶ 3-13.) Defendants are "all named in both their official and personal capacities." (TAC, at

¶ 17.)

    (1)    <u>Seizure of Three Vehicles:</u>

Litwak first claims that the Defendants unlawfully seized his personal property on three separate occasions. First, around February 18, 2016, Litwak's 1999 Volkswagen Jetta was towed from Litwak's private property located in St. Clair by Trial Towing Company. (TAC, at ¶¶ 20, 23.) Allegedly, this car was seized by all three named police officers at the request of the Mayor.[1] (TAC, at ¶¶ 22-23.) The Jetta is titled in the name of Litwak's business, JRL. (TAC, at ¶ 23.) Second, on a prior unknown date, the St. Clair police–specifically Officer Demarco–seized a 1994 Chevrolet pickup truck titled under one of Litwak's businesses while it was parked on Litwak's private property. (TAC, at ¶ 25.) Litwak claims this truck is being held at B's Garage in Pottsville, Pennsylvania, with towing and storage bills amounting to roughly $90,000.00. (TAC, at ¶ 27.) Third, on another unknown date, the St. Clair police instructed the Pennsylvania State Police to seize another 1994 Chevrolet pickup owned by Litwak while it was parked on property leased by Litwak in Gilberton, Pennsylvania.[2] (TAC, at ¶¶ 29-30.) Notably, the Pennsylvania State Police is not named in this action. The current location of this vehicle is unknown. (TAC, at ¶ 30.) Litwak claims that the Borough, Mayor Tomko, and Officers Dempsy, Leskin, and Demarco "presently retain custody and control over" both Chevrolet pickups and refuse to return either car. (TAC, at ¶ 32.)

Plaintiff also suggests that these seizures resulted from a "long-standing . . . Borough

---

[1] While not immediately clear, it appears that Plaintiff claims that the Mayor directed the Police to conduct the seizure. (TAC, ¶ 22-23.)

[2] It is not clear who actually seized the vehicle in question. First, Plaintiff pleads that the Pennsylvania State Police were instructed to seize the car. (TAC, at ¶ 29.) Then, Plaintiff implies that Officers Dempsy and Demarco seized the car while it was outside of their jurisdiction. (TAC, at ¶ 31.)

2

policy and custom specifically designed to harass, intimidate and harm Plaintiff." (TAC, at ¶ 34.) However, Plaintiff has not offered any detail related to the alleged policy.

    (2)    <u>St. Clair Borough Zoning Appeal Dispute:</u>

Litwak owns parcels of land located in the Borough that are zoned in a C-2 General Commercial District under St. Clair Zoning Ordinance 326 (the "Ordinance"). (TAC, at ¶ 40.) On June 20, 1996, a Borough zoning officer issued Litwak a zoning permit which certified the repair garage Litwak sought to open was a use in compliance with the Ordinance. (TAC, at ¶ 42.) Days later, the Borough revoked the June 20, 1996 permit. (TAC, at ¶ 43.) On April 29, 1997, Litwak and his wife, Frances Litwak, filed an Application with the Borough Zoning Hearing Board ("Zoning Board") seeking a determination that the sale, service, and repair of used automobiles on his parcels of land in a C-2 zoning district was a permitted use as of right under Section 5.202. (TAC, at ¶ 45.) Under the Pennsylvania Municipalities Planning Code, 53 P.S. § 10908(1.2), "[t]he first hearing before the [zoning] board or hearing officer shall be commenced within 60 days from the date of receipt of the applicant's application, unless the applicant has agreed in writing to an extension of time." (TAC, at ¶¶ 46.) The Zoning Board did not hold a hearing on the Application within sixty (60) days of its filing. (TAC, at ¶¶ 46-47.) Furthermore, § 10908(9) states:

> Where the board fails to . . . commence, conduct or complete the required hearing as provided in subsection (1.2), the decision shall be deemed to have been rendered in favor of the applicant unless the applicant has agreed in writing or on the record to an extension of time. When a decision has been rendered in favor of the applicant because of the failure of the board to meet or render a decision as hereinabove provided, the board shall give public notice of said decision within ten days from the last day it could have met to render a decision in the same manner as provided in subsection (1) of this section. If the board shall fail to provide such notice, the applicant may do so. Nothing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction.

On September 2, 1997, Litwak published a Notice in the Pottsville Republican Herald Newspaper that stated because "[t]he Board did not hold a hearing on the Variance Application within sixty (60) days of the Filing Date. . . a decision granting the Relief is thus

3

deemed to have been rendered in favor of the Applicants." (TAC, at ¶ 49.) The Borough subsequently filed an appeal of the decision on September 22, 1997. (TAC, at ¶ 50.) On April 21, 1998, the entire record from the Zoning Board regarding this matter was filed with the Schuylkill County Prothonotary. (TAC, at ¶ 52.) In August of 2000, the Prothonotary sought to have the case purged for lack of docket activity. (TAC, at Ex. 9.) In response, the Borough filed a motion to remove the zoning case from the purge list together with a certificate of service. (*Id.*) The only other docket entries from April 21, 1998 to October 28, 2015 were made on September 5, 2003, August 8, 2006, September 11, 2012, and September 28, 2015. These entries were all Statements of Intention to Proceed with the appeal and a concurrent certificate of service filed by the Borough. (*Id.*)

Around October 28, 2015, Litwak filed a motion to dismiss with prejudice the Borough's eighteen-year-old zoning appeal. (TAC, at ¶ 56.) The Schuylkill County Court of Common Pleas scheduled a hearing on Litwak's motion for December 16, 2015. (TAC, at ¶ 57.) On December 3, 2015, the Borough withdrew its appeal. (TAC, at ¶¶ 58.) To date, Plaintiff alleges that the Borough has not issued the zoning permit at issue.

Other individuals located within the C-2 zoning district were granted zoning permits by the Borough during this time. Specifically, Tom's Auto Sales was granted a zoning permit for a used car lot in 1999 for property in a C-2 zoning district that is less than one-quarter mile from Litwak's location. (TAC, at ¶ 63.) 21st Street Motors was also granted a zoning permit for a used car lot in 1979 for a location in a C-2 zoning district that is three blocks from Litwak's location. (TAC, at ¶ 64.) Additionally, Kenneth Diehl was granted a zoning permit to "conduct auto sales [on] property he purchased from Defendant Joanne Brennan. . . ." (TAC, at ¶ 65.)

(3) Litwak's Towing Business:

In 1989, Litwak began operating JRL, a towing service and related business, along Route 61 with a principal place of business at 148 North 3rd Street, St. Clair, Pennsylvania. (TAC, at ¶ 73.) From 1989 to the present, Litwak regularly received requests to tow vehicles from private motorists, members of the Pennsylvania State Police, and members

4

of the police from surrounding communities. (TAC, at ¶ 74.) Since opening JRL, Litwak has made requests to the Borough Council, as well as to federal and state government officials, asking the Borough "to be advised to utilize his towing services, to no avail." (TAC, at ¶ 75.) From 1994 to the present, Litwak claims his towing business possessed the capabilities necessary to conduct vehicle towing operations within the Borough. (TAC, at ¶ 77.) Beginning in 1997, Litwak would attend the Borough Council meetings and attempt to discuss the problems he was having regarding his towing operations. (TAC, at ¶ 79.)

Litwak claims the Borough blacklisted him from towing jobs. (TAC, at ¶ 80.) Litwak petitioned the Borough at least forty (40) times regarding the blacklisting of JRL and his zoning dispute. (TAC, at ¶ 81.) Despite JRL's location right next to Route 61 in the Borough of St. Clair, Litwak claims Defendants Officers Dempsey, DeMarco, and Leskin refused to call his towing service when an accident occurred within the Borough along Route 61. (TAC, at ¶ 82.) Litwak specifically claims the Defendant Police Officers would exclusively call Trail Towing instead of JRL. (TAC, at ¶¶ 83-84.)

Despite this alleged Borough policy or custom to exclusively use Trail Towing, Litwak notes that the Borough Police used JRL for towing services at least twice. In the Summer of 2013, Litwak complained to then-Mayor Robert Maley that the Borough Police would not use his towing services. (TAC, at ¶ 87.) Maley wrote a letter to Defendant Officer Dempsey, the Acting Chief of Police, dated September 20, 2013, which states in relevant part: "Effective September 20, 2013, JRL . . . will be utilized as the towing service for the St. Clair police department. JRL will provide services for towing, abandoned vehicles, accidents, etc." (TAC, at Ex. 12.) During the two towing jobs Litwak performed for the Borough Police, Litwak arrived to the scene within fifteen minutes of being called, whereas it would take Trail Towing approximately forty-five minutes to respond to any accident that occurred in near proximity to the Borough. (TAC, at ¶¶ 89, 91.) Despite this response time, Defendant Police Chief Dempsey told Litwak he had a poor response time, was incompetent, and distracted motorists by leaving his emergency lights activated while at the scene of the accident. (TAC, at ¶¶ 90, 92.)

5

## B. Procedural History

On March 11, 2016, Plaintiff filed a complaint in the United States District Court for the Middle District of Pennsylvania against the twelve Defendants described above. (*Doc*. 1). Following Defendants' first Motion to Dismiss on June 7, 2016 (*Doc*. 7), Plaintiff amended his original Complaint. (*Doc*. 9).

Defendants moved to dismiss Plaintiff's First Amended Complaint on July 6, 2016 claiming that the infirmities in the original Complaint had not been cured. (*Doc*. 11). On January 17, 2017, I denied Defendants' Motion to Dismiss as moot and ordered Plaintiff to replead his First Amended Complaint due to its failure to comply with the requirements of Federal Rules of Civil Procedure 8. (*Doc*. 17). Plaintiff timely filed his Second Amended Complaint on January 30, 2017. (*Doc.* 18).

Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on February 13, 2017. (*Doc.* 19). Again, Defendants took the position that Plaintiff's newly filed Complaint failed to comply with the mandates of Rule 8. I agreed and ordered Plaintiff to file a Third Amended Complaint. (*Doc.* 26.) Plaintiff timely filed his Third Amended Complaint.

Defendants have filed a fourth Motion to Dismiss. (*Doc.* 28.) Again, Defendants argue that Plaintiff's Third Amendment Complaint fails to comply with Rule 8 and fails to state a claim upon which relief may be granted. Defendants' Motion has been fully briefed and is ripe for review.

## II. Discussion

### A. Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint:

Defendants argue that Plaintiff's Third Amended Complaint should be dismissed because it intermingles separate causes of action within each count[3] in contravention of the

---

[3] "This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

Federal Rules of Civil Procedure and my January 17, 2017 and September 19, 2017 Orders. Plaintiff disagrees and explains that he has separated his action into "three separate components." (*Doc.* 34-1, at 3.) I agree with the Defendants and will dismiss Plaintiff's Complaint with prejudice.

Federal Rule of Civil Procedure 8 provides "that any pleading that includes a claim for relief shall contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Westinghouse Securities Litigation*, 90 F.3d 696, 702 (3d Cir. 1998) (Alito, J) (citing FED.R.CIV.P. 8(a)(2)). Rule 8 further provides that "each averment of a pleading shall be simple, concise, and direct." Fed.R.Civ.P. 8(e)(1). "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Securities Litigation*, 90 F.3d at 702 (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1217 at 169 (2d ed. 1990)). At bottom, to comply with Rule 8 a complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Frazier v. Southeastern Pa. Transp. Auth.*, 785 F.2d 65, 66 (3d Cir. 1986) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Failure to comply with the mandates of Rule 8 may result in dismissal. *Washington v. Warden SCI-Greene*, 608 Fed. App'x. 49, 51 (3d Cir. 2015) (allowing for the dismissal of a *pro se* complaint in violation of FED.R.CIV.P. 8).

In two earlier Memoranda, I explained that prior iterations of Plaintiff's Complaint qualified as "shotgun pleadings.[4]" Such pleadings have been regularly criticized by the Third

---

[4] "The United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in this area. The Eleventh Circuit recently categorized shotgun pleadings into four different types: (1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does 'not separat[e] into a different count each cause of action or claim for relief'; and (4) a complaint

Circuit and fail to meet the pleading requirements of Rule 8. *See Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988) (criticizing the "all too common shotgun pleading approach" to complaints); *see also Bartol*, 2017 WL 1709814, *3-4 ("The unifying characteristic of . . . shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." (quoting *Weiland*, 792 F.3d 1313)); *Wright v. City of Phila.*, No. 01-6160, 2005 WL 3091883, at *11 (E.D. Pa. Nov. 17, 2005) (citing *Hynson* for the proposition that "[t]he Third Circuit . . . has a policy against Plaintiffs using a 'shotgun pleading approach' . . . and requires civil rights cases [to] be plead[ed] with considerable specificity."). Put simply, a shotgun pleading does not give defendants adequate notice of the claims brought against them and the grounds upon which each claim rests. *See Weiland*, 792 F.3d at 1313. For that reason, a shotgun pleading does not comply with the mandates of Rule 8. *See Conley*, 355 U.S. at 47 (Rule 8 requires a complaint provide a defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

Plaintiff's Third Amended Complaint remains a shotgun pleading. First, the Third Amended Complaint contains multiple counts where each count adopts the allegations of all preceding counts. *See Magluta*, 256 F.3d at 1284 (explaining that incorporating all preceding allegations results in the inclusion of "factual allegations that could not possibly be material to that specific count."). For example, Count Three contains, by reference, all

---

that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.' The 'unifying characteristic of these four types of shotgun pleadings 'is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.'" *Bartol v. Barrowclough*, No. 17-0614, 2017 WL 1709814, *3-4 (E.D. Pa. May 3, 2017) (quoting *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313 (11th Cir. 2015).

averments previously alleged. (TAC, at ¶ 72.) Stated differently, this means that Plaintiff's tortious interference claim includes a number of unrelated allegations such as the existence of a zoning dispute and the taking of private property. This confusing pleading practice was identified in both the January 17, 2017 and September 19, 2017 Memoranda. Yet, Plaintiff has not altered his Complaint after two amendments to remedy this confusion. Second, the Third Amended Complaint is riddled with vague and conclusory statements. *See Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (explaining that a complaint that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants" was a "prototypical shotgun complaint."); *Bartol*, 2017 WL 1709814, *3-4 (finding a complaint "replete" with vague and conclusory allegations to be a shotgun pleading). For example, Count Two relies heavily on a "sham" appeal allegedly maintained by Defendant Council Members. (*See* TAC, at ¶ 50.) But, Plaintiff avers no statement of fact related to the appeal. Instead, Plaintiff relies on repetition–stating that the appeal was a "sham" or "unlawful" at least ten times–in an attempt to allege a cognizable claim. (*See, e.g.*, TAC, at ¶¶ 50-52; 55.) Third, the most recent Complaint does not separate claims into distinct counts. Remember, I explicitly noted in the September 19th Memorandum that Count Three contained a variety of claims, which were wholly unrelated to the titled count. I stated:

> Count Three, titled "Tortious Interference with Prospective and Actual Contractual Relationships," claims that the actions pled resulted in a "deprivation of equal protection, denial of due process, and selective treatment motivated by an intention by the Defendants to willfully discriminate on the basis of desire to punish. . . Plaintiff . . . ." Such a statement is not only conclusory, but confusing because the deprivation described is wholly unrelated to a state contract claim of tortious interference. Such a pleading–one that intermingles a wide number of claims based on a variety of legal theories–runs afoul of the Federal Rules and this Court's January 17, 2017 order.

*Litwak v. Tomko*, No. 16-446, 2017 WL 4151178, at *5 (M.D. Pa. Sept. 19, 2019). In Count Three of the Third Amended Complaint, Plaintiff remains steadfast in his belief that there

9

is some logical connection between a contract claim of Tortious Interference and constitutional claims premised on the Fourteenth Amendment's Equal Protection and Due Process Clauses. (TAC, at ¶ 99 ("[Defendant's action] results in deprivation of equal protection, denial of due process, and selective treatment motivated by an intention by the Defendants to willfully discriminate on the basis of desire to punish and maliciously, with bad faith, economically injure Plaintiff . . . .").) I continue to disagree.[5]

For these reasons, I will not diverge from my earlier finding: Plaintiff's pleading, which intermingles seemingly unrelated fact and conclusory statements with claims based on a variety of legal theories, is a shotgun pleading. Because the Third Amended Complaint is a shotgun pleading, it is yet again in violation of the pleading requirements set forth by the Federal Rules of Civil Procedure.

It is within my discretion to dismiss Plaintiff's Third Amended Complaint. *See Washington*, 608 Fed. App'x. at 51. I will dismiss Plaintiff's Third Amended Complaint with prejudice because I find that amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (explaining that Plaintiff is not entitled to an inequitable or futile amendment). I have provided Plaintiff ample opportunity to amend his Complaint, and I recognize that there is no evidence to suggest that offering Plaintiff a third opportunity to amend would result in the production of a compliant complaint.[6]

---

[5] Notably, Counts One and Two suffer equally from this pleading flaw. For example, Count Two, when construed liberally, appears to allege: (1) a violation of a local zoning ordinance; (2) a violation of a state statute, 42 Pa. C.S.A. § 8351, for the wrongful use of civil proceedings; (3) a violation of the Fourteenth Amendment's Due Process Clause; and (4) a violation of the Fourteenth Amendment's Equal Protection Clause.

[6] It is important to remember that Plaintiff is represented by counsel; he is not a pro se plaintiff. As such, I am under no obligation to liberally construe the instant Complaint to make out potential claims. *See Ostrowski v. D'Andrea*, No. 3:14-cv-00429, 2015 WL 10434888, at *3

Therefore, Plaintiff's Third Amended Complaint will be dismissed with prejudice because a shotgun pleading does not comply with the mandates of Rule 8.

### III. Conclusion

For the above stated reasons, Plaintiff's Third Amended Complaint will be dismissed with prejudice.

An appropriate order follows.

| | |
|---|---|
| March 19, 2017 <br> Date | /s/ A. Richard Caputo <br> A. Richard Caputo <br> United States District Judge |

---

(M.D. Pa. Aug. 11, 2015). It is the job of Plaintiff's counsel to clearly articulate a federal claim in the Complaint.